516 P.2d 1231

**STATE of Arizona, Appellee,**

v.

**Cleo Coy PATTERSON, Appellant.**

**No. 1 CA–CR 557.**

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 11, 1973.

Gary K. Nelson, Atty. Gen. by Louis A. Moore, Jr., Asst. Atty. Gen., for appellee.

Cohen, Gerst, Groseclose & Meissner by Stephen A. Gerst, Phoenix, for appellant.

## OPINION

STEVENS, Judge.

Cleo Coy Patterson, the defendant, was tried in the Superior Court, adjudged guilty of burglary, sentenced, and appeals.

At about midnight on or about 10 February 1972, rolls of copper wire suitable for electrical transmission were stolen from a fenced storage yard belonging to the City of Mesa. The record is clear that the defendant participated as a principal. The only question raised on the appeal is whether there was proof of the offense charged.

The applicable portion of the statute reads as follows:

"§ 13–302. Definition and degrees of burglary; punishment

"A. A person entering * * * a fenced or otherwise enclosed commercial yard used for storing equipment or supplies, including but not limited to scrap metals, steel or construction materials, with intent to commit grand or petty theft, or any felony, * * * is guilty of burglary."

The defendant strenuously urges that the fenced yard in question was not a "commercial yard" within the statutory prohibition.

The State showed through the testimony of James MacDowell that the City of Mesa maintained an electrical department; that he was employed by that department to construct and maintain lines and transformers; and that the City of Mesa elec-

trical department maintained a compound surrounded by a nine-foot-high fence for storage of copper wire used in transmission lines, together with other material.

The defendant contends that the purpose of specifically naming "fenced * * * *commercial* yards" is to protect store owners whose facilities could not contain their entire inventory. Defendant's contention is that because the yard in which the copper wire was kept was not involved in the "exchange of goods, production, or property of any kind", the yard was not shown to be a "commercial yard" and that no burglary under A.R.S. § 13–302(A) was proved. We believe that the defendant reads the word "commercial" in a narrow manner not intended by the Legislature.

■ It is clear that the commercial nature of a yard is not dependent on the presence of goods held for sale. For instance, the statute proscribes entry of a yard used to store "equipment". Equipment means "the implements used in an operation or activity" or "everything * * * needed for an operation or service." Holtz v. Babcock, 143 Mont. 341, 389 P.2d 869, 874 (1963).

By reading "commercial" together with all the words which modify it, we conclude that the commercial nature of a yard is not determined by the presence of goods for sale within the yard, but by the presence of goods whose ultimate purpose is the furtherance of a business or commercial activity as distinguished from a purely private activity.

The evidence showed that the City of Mesa built and maintained electrical lines through its own "electrical department" and that this department conducted its activities in a manner similar to "other utilities in the Valley." For this purpose it maintained the fenced yard in question, wherein it kept rolls of copper wire.

■ We find little aid from the case law in resolving the issue before us. We hold that a "commercial yard" within this statute, is one maintained for business, commercial, industrial or municipal pur-

poses including, but not limited to, materials held for sale as distinguished from a yard wherein the materials are stored for the private and personal use of the owner of the yard. This holding is consistent with A.R.S. § 1–211.

We have further examined the record and find no error, fundamental or otherwise.

Affirmed.

DONOFRIO, P. J., and OGG, J., concur.