660 P.2d 486

Mary SHEEHAN, individually as surviving wife of Daniel J. Sheehan, deceased and on behalf of the surviving children of the deceased, Plaintiff/Appellant/Cross Appellee,

v.

PIMA COUNTY, Arizona, a political subdivision and the Board of Supervisors, Defendants/Appellees,

and

Lederle Laboratories, a foreign corporation; American Cyanamid Co., a foreign corporation; Pfizer, Inc., dba Pfizer Laboratories Division, Defendants/Appellees/Cross Appellants.

No. 2 CA–CIV 4284.

Court of Appeals of Arizona, Division 2.

Dec. 14, 1982.

Rehearing Denied Feb. 4, 1983.

Review Denied March 8, 1983.

Ettinger & Deckter, P.C. by Louis L. Deckter and Jack A. Ettinger, Tucson, for plaintiff/appellant/cross appellee.

Leonard Everett, Tucson, for defendant/appellee Pima County.

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for defendants/appellees/cross appellants Lederle Laboratories & American Cyanamid Co.

Fish, Briney, Duffield, Miller, Young & Adamson, P.C. by Richard Briney and Richard Duffield, Tucson, for defendant/appellee/cross appellant Pfizer, Inc.

## OPINION

HOWARD, Chief Judge.

This is a wrongful death action. Daniel J. Sheehan died after contracting polio from his daughter, Nuria, who had been given a dosage of the Sabin Oral Polio Vaccine.

Appellant filed this lawsuit against appellees based upon strict liability in tort contending that since the vaccine was unavoidably unsafe, the failure to warn them of the danger of contact polio rendered the product defective. See Restatement (Second) of Torts, § 402(A), Comment *k*. The jury returned a defense verdict, hence this appeal. The drug companies have filed cross-appeals which will be treated as cross-issues since they prevailed below and are not aggrieved parties. See *DeLozier v. Smith*, 22 Ariz.App. 136, 524 P.2d 970 (1974); *Aegerter v. Duncan*, 7 Ariz.App. 239, 437 P.2d 991 (1968).

On November 16, 1976, Mary Sheehan took her two-month-old daughter, Nuria, to a northside Tucson "Well Baby Clinic" so that Nuria could receive her polio vaccine. The order for the vaccine was given by a pediatric nurse practitioner and administered by a licensed practical nurse. Although there was a medical doctor present at the clinic, this doctor did not see the Sheehans. "Well Baby Clinics" are operated by the Pima County Health Department out of five substations in the Tucson area. They provide free preventative services to children up to six years of age.

The Sabin Oral Polio Vaccine contains a live attenuated virus. It is undisputed that the deceased died from a case of contact polio due to the vaccine administered to his daughter.

The original polio vaccine was discovered by Jonas Salk. It was administered by an intramuscular injection and the vaccine contained no live virus. Dr. Sabin discovered an oral vaccine which used a live virus and is administered orally. After the Sabin vaccine came on the market it replaced the Salk vaccine since Sabin was considered by the American Academy of Pediatricians and applicable federal authorities as more effective than the Salk vaccine. In 1976, although the Salk vaccine was licensed for use in the United States, it was not being manufactured here and there was evidence that for all intents and purposes it was not available. The evidence disclosed that the chance of getting contact polio from the Sabin vaccine was 1 in 5,000,000. The evidence also disclosed that Mrs. Sheehan was never warned by appellee about this risk.

Appellant presents the following issues for review. Did the trial court err (1) in denying her motion for judgment notwithstanding the verdict or for a new trial; (2) in refusing her requested Instruction # 4; (3) in denying her motion in limine; (4) in admitting evidence of the receipt of Social Security benefits by Mary Sheehan; (5) in admitting evidence of the number of reported contact polio cases per million population, and (6) in refusing to admonish the jury when counsel for Pima County was allegedly guilty of misconduct?

As we have previously noted, the drug companies filed "cross-appeals." They contend they were entitled to a directed verdict because there was no proof as to which drug company manufactured the vaccine given to Nuria. Lederle separately contends that it complied with applicable case law by obligating the state to give the

purchaser (user) a warning. See *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir.1968).[1] Pfizer separately contends that since the vaccine is a prescription drug, it cannot be held liable. See *Dyer v. Best Pharmacal*, 118 Ariz. 465, 577 P.2d 1084 (App.1978). Since we do not agree with appellant's contentions, we need not decide these cross-issues.

▮ The first two questions appellant presents are inextricably intertwined. The trial court denied appellant's request to give the following instruction:

> "Where a user is injured by a product distributed without a required warning it *is presumed* that the user would have read any warning provided and acted so as to minimize the risk." (Emphasis added)

Appellant contends the trial court erred in refusing this instruction and that the presumption mentioned therein was never rebutted, thus mandating the court's entry of judgment n.o.v. or a new trial. We do not agree.

Appellant's authority for her proposed instruction is the case of *Reyes v. Wyeth Laboratories, Inc.*, 498 F.2d 1264 (5th Cir. 1974), cert. den. 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688. *Reyes* involved the contracting of paralytic poliomyelitis through ingestion of the Sabin vaccine by an eight-month-old child who was given the vaccine at a county health clinic by a public health nurse who had read the warning contained in the package insert but who did not pass the warning on to the child's mother. On the issue of proximate cause and the warning, the court stated:

> "... Where a consumer, whose injury the manufacturer should have reasonably foreseen, is injured by a product sold without a required warning, a rebuttable presumption will arise that the consumer would have read any warning provided by the manufacturer, and acted so as to minimize the risks. In the absence of evidence rebutting the presumption, a jury finding that the defendant's product was the producing cause of the plaintiff's injury would be sufficient to hold him liable.

Such a test makes sense in this case. The jury found that the defendant's polio vaccine caused Anita Reyes's polio. Testimony by her mother as to what she would have done, had proper warnings been provided, would have been both speculative and self-serving. Thus we turn to the *Technical Chemical* presumption that a warning, had it been given, would have been heeded. Buttressing the presumption that Mrs. Reyes might have taken preventive steps is the testimony of Reyes' expert, Dr. Ramiro Casson, that some pediatricians in Hidalgo County, at least by the time of trial, had begun administering killed-virus vaccine to infants in order to build up their level of antibodies before feeding them the live-virus drug. Tending to rebut the presumption that Mrs. Reyes would have behaved differently had she been warned was the fact that she twice returned to the Mission Clinic for further doses of vaccine, even after Anita contracted polio. Yet it is patent from her testimony that Mrs. Reyes had not, even then, been informed of the danger of the polio vaccine, and did not in fact understand what medication Anita was to receive. The legal presumption suggested by the *Technical Chemical* opinion thus operates here to provide the final element necessary to

---

1. In *Davis,* which involved the Sabin oral vaccine, the court held that while ordinarily in the case of prescription drugs warning to the prescribing physician is sufficient, where the drug was not being disbursed as a prescription drug but was being dispensed to all comers at a mass clinic without an individualized balancing by a physician of the risk involved, it was incumbent upon the drug company to see that warnings reached the consumer either by giving warning itself or by obligating the purchaser to give warning. In *Reyes v. Wyeth Laboratories, Inc.,* 498 F.2d 1264 (5th Cir.1974), cert. den. 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688, the *Davis* rationale was extended to a county health clinic in a Sabin vaccine case. See also, *Givens v. Lederle,* 556 F.2d 1341 (5th Cir.1977) also involving the Sabin Oral Polio Vaccine in which the Sabin vaccine was administered in a private doctor's office but "... in a manner more like that of a small county health clinic ...."

hold Wyeth Laboratories liable for Anita Reyes' poliomyelitis. Aware of its unavoidable dangers and cognizant that it foreseeably would not be dispensed as a prescription drug, Wyeth nonetheless failed to warn Mrs. Reyes that its vaccine could cause polio in some few of the millions receiving the medication. Administered without a warning, the vaccine was 'defective', hence unreasonably dangerous. According to the test we have distilled above, we must assume in the absence of evidence to the contrary that Anita's parents would have acted on the warning, had it been given. Perhaps this would have prevented her polio. It unquestionably would have avoided Wyeth's liability."

The *Technical Chemical* case mentioned is the case of *Technical Chemical Company v. Jacobs*, 480 S.W.2d 602 (Tex.1972) which involved a suit against a manufacturer of a can of freon which exploded in the plaintiff's hand as he was attempting to put its contents into the air-conditioning unit of his automobile. The plaintiff in *Technical Chemical* attached a hose from the high pressure side of his air conditioning compressor to a can of freon rather than joining a hose from the low pressure side which was the proper procedure and the can exploded. The explosion was a possible result which the directions on the can's label did not mention.

The proferred instruction here tells the jury that it can presume that if the Sheehans had been warned about the possibility of contact polio, they would not have allowed Nuria to receive the vaccine. We do not believe such an instruction is applicable to the facts here.[2] The stated presumption is, in essence, a presumption of due care. It "... is founded on a law of nature and has for its motives the fear of pain, maiming and death." *Davis v. Boggs*, 22 Ariz. 497,

508, 199 P. 116, 120 (1921). If a person is warned that if he fails to hook up the air conditioning hose a certain way the can of freon might explode, it is fair to presume that the person will not hook up the hose in an improper manner. However, can the law presume that if the Sheehans were told that there was a slight chance of contact polio (1 in 5,000,000) and that there was no other vaccine readily available, they would not have allowed the vaccine to have been administered to Nuria in spite of their knowledge of the ravaging effects of polio upon children? In fact, the evidence shows the opposite. It would support a presumption that in the exercise of due care they would have given Nuria the vaccine, given the fact that notwithstanding the risk, millions of Americans gave the vaccine to their children and given the fact that it was the vaccine recommended and approved by the federal government and the National Academy of Peditricians.

In any event, a presumption disappears entirely upon the introduction of any contradicting evidence and when such evidence is introduced the existence or non-existence of the presumed fact is to be determined exactly as if no presumption had ever been operative in the action. *Silva v. Traver,* 63 Ariz. 364, 162 P.2d 615 (1945); *Seiler v. Whiting,* 52 Ariz. 542, 84 P.2d 452 (1938). Mrs. Sheehan testified that if she had received any type of warning they would have deferred and gone and discussed it with other people, and either not had the vaccine or had it at another time. Mrs. Sheehan testified that if she had received any type of warning they would have deferred and gone and discussed it with other people, and either not had the vaccine or had it at another time. Mrs. Sheehan was unable to say at trial that she would not have, under any circumstances, permitted Nuria to receive the vaccine. Her testimony, combined with the low risk

---

**2.** The Sheehans also argued for the first time at oral argument before this court that if they had received the warning the decedent could have taken other steps to avoid the risk such as taking the Salk vaccine or avoiding contact with the child, especially her feces which transmits the virus. This was not their theory in the trial court as can be seen from the instruction, to which they did not object, which is later set forth. We shall not consider this new theory since appellate review is circumscribed by the posture of the case in the lower court. *Allen v. Graham,* 8 Ariz.App. 336, 446 P.2d 240 (1968).

factor and the unavailability of any other vaccine contradicts the presumption of due care even if such presumption existed in this case. The trial court without objection, instructed the jury on this issue as follows:

"The plaintiffs have the burden of proving that the parents of Nuria Sheehan would have refused to allow her to be given the vaccine offered if adequate warning had been given.

The test to be applied by you should be as follows: in light of all the circumstances existing on the date the vaccine was administered, would the parents have refused the vaccine offered if adequate warnings of risk had been given."

We believe this instruction adequately instructs the jury on the issues involved, and properly left the question to the jury.[3]

■ There is yet another reason why the trial court did not err in failing to give the requested instruction. If there is any presumption of due care in this case, it is, according to the *Reyes* case, a rebuttable one. Appellant's proferred instruction does not speak of a "rebuttable presumption." The instruction reads as if the presumption is conclusive and is erroneous. We do not consider the refusal to give an erroneous instruction to be reversible error. *Moore v. Gray*, 3 Ariz.App. 309, 414 P.2d 158 (1966).

■ Prior to trial appellant filed a motion in limine to prevent appellees from introducing evidence of Mr. Sheehan's prior narcotics addiction and statistical data regarding the number of contact polio cases reported. She contends the trial court erred in denying this motion in limine. We do not agree. As far as the statistical data is concerned, it was admissible to show whether the Sheehans would or would not have permitted the vaccine to be administered to Nuria if they had been given a warning.

Testimony was introduced which showed that Mr. Sheehan had been a heroin addict and that within the last couple of years before his death, he had smoked marijuana once or twice. The general rule appears to be that the trier of fact is entitled to consider, on the issue of damages, decedent's characteristics and habits including his general ability, other occupations he was qualified to fulfill, his industriousness, disposition to earn, intelligence, manner of living, sobriety or intemperance, frugality or lavishness, and other personal characteristics that are of assistance in securing business or earning money, his age and life expectancy. See 22 Am.Jur.2d, Death § 144; 25A C.J.S. Death § 122 and *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632 (Iowa 1969) and cases cited therein at page 655. Appellant has offered us no authority to support her proposition that this testimony was erroneously admitted. Assuming arguendo that there was error in admission of this testimony, it was not prejudicial since the jury did not award damages.

■ Mrs. Sheehan testified during the trial that she and Nuria were living in a group home operated by a religious order. When asked by counsel for Pima County who paid for her room and board she replied that she was receiving Social Security. Appellant's counsel immediately objected, the objection was sustained, and pursuant to appellant's counsel's request the jury was instructed to disregard the question and answer. Appellant was apparently satisfied with the striking of the testimony and curative instruction of the court because she did not move for a mistrial. While her complaints about the admissibility of Social Security benefits being contrary to the collateral source rule may be well taken, her claim that the court should have granted a new trial based on the admission of such evidence is not. The trial court admonished the jury and struck the evidence from the record. Additionally, appellant did not move for a mistrial. In any event, since no

---

3.  Udall & Livermore in Vol. 1, Law of Evidence, 2nd Ed., § 143, suggest that it is unnecessary to mention the word "presumption" at all in the jury instruction. If the presumption establishes a burden of proof, then the instruction should be in terms of burden of proof and if the presumption imposes a burden of going forward and that burden has not been met, the judge should direct a verdict on that issue. If it has been met, then instructions on the issue suffice.

damages were awarded any error would be harmless.

 During the trial counsel for Pima County had Mrs. Sheehan read to the jury a document which had not been admitted into evidence. The document referred to the authorization by the Sheehans permitting vaccination of Nuria. Since this document was not admitted into evidence appellant claims that there was misconduct on the part of counsel for Pima County in reading it to the jury and a reversal is mandated. We do not agree. Any objection to the testimony was waived by appellant's failure to object.

The judgments are affirmed and the cross-appeals are dismissed.

HATHAWAY, J., and J. RICHARD HANNAH, Superior Court Judge, concur.

NOTE: Judge BEN C. BIRDSALL having recused himself in this matter, Judge J. RICHARD HANNAH was called to sit in his stead and participate in the determination of this decision.