NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JIMMY GARCIA, *Appellant.*

No. 1 CA-CR 19-0097
FILED 1-30-2020

Appeal from the Superior Court in Yuma County
No. S1400CR201800657
The Honorable Roger A. Nelson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Cynthia Brubaker
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

_____

**C A M P B E L L**, Judge:

¶1        Garcia appeals his conviction and sentence for third-degree burglary, arguing that the evidence presented at trial was insufficient to support his conviction. For reasons that follow, we affirm.

**BACKGROUND**

¶2        The burglary occurred at a property located in Yuma, Arizona. Two brothers occupied the property, which housed two businesses and a residence. One brother owned and operated a computer-repair shop from one of the buildings on the property. The other brother, the victim, operated a carpet-cleaning business from the other building, which doubled as his residence. The businesses shared a driveway ending at a chain-link fence that opened into a shared concrete pad, or common area. The entire property was enclosed by either the fence, the business' walls or concrete walls topped with barbed wire. Officer Jeffrey Ross testified that the yard was akin to a secure compound. A carport extended from the carpet-cleaning business to inside the yard where the victim parked his van and bicycle. He also stored commercial equipment under the carport, including jacks and hoses.

¶3        One day the victim left the gate open while he went grocery shopping. Garcia entered the yard through the open gate, took the victim's bicycle from underneath the carport, and quickly walked the bicycle up the driveway. The victim returned to find Garcia attempting to take his bicycle. In response, he drew his firearm and ordered Garcia to the ground. The victim then asked Garcia what he was doing with the bicycle. Garcia claimed that the bicycle was laying against the trash can, and that he took it because he was looking for trash to sell. The victim called the police, and Garcia was arrested.

¶4        Garcia was charged with third-degree burglary. At the conclusion of the State's case, Garcia moved for a judgment of acquittal based on Arizona Rule of Criminal Procedure ("Rule") 20, arguing, among

other things, that the yard was not a fenced commercial or residential yard under the burglary statute. The superior court denied Garcia's motion, finding that the yard was a "fenced commercial yard" and that there was "substantial evidence by which a jury could return a verdict of guilty." The jury found Garcia guilty as charged. The court sentenced Garcia to 1.5 years of imprisonment. This timely appeal followed.

## DISCUSSION

¶5 Garcia challenges the sufficiency of the evidence underlying his conviction. He argues that he did not enter a "fenced commercial yard" within the meaning of A.R.S. § 13–1501(4) (defining commercial yard) and A.R.S. § 13–1506(A)(1) (defining third-degree burglary). He contends (1) that the yard was not "fenced" because the barrier enclosing the yard did not prevent common use, and (2) that the State failed to meet its burden to prove that the yard was "commercial."

¶6 We review claims of insufficient evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). We examine the evidence in the light most favorable to sustaining the verdict and resolve all reasonable inferences against the defendant. *State v. Rienhardt*, 190 Ariz. 579, 588–89 (1997). Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). In evaluating the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and "do not reweigh the evidence to decide if we would reach the same conclusions as the trier of fact." *Borquez*, 232 Ariz. at 487, ¶ 9 (citation omitted).

¶7 "The primary aim of statutory construction is to find and give effect to legislative intent." *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 329–30, ¶ 11 (2001). "We look first to the statute's language because we expect it to be the best and most reliable index of a statute's meaning." *State v. Hinden*, 224 Ariz. 508, 510, ¶ 9 (App. 2010) (internal quotation omitted). "If the language is plain, we need look no further[,]" and we apply it "unless application of the plain meaning would lead to impossible or absurd results." *State v. Williams*, 175 Ariz. 98, 100 (1993); *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11 (2003).

**¶8**      "A person commits burglary in the third degree by . . . [e]ntering or remaining unlawfully in or on a nonresidential structure or in a fenced commercial or residential yard with the intent to commit any theft or any felony therein." A.R.S. § 13-1506(A)(1). A "fenced commercial yard" is a "unit of real property that is surrounded completely by fences, walls, buildings or similar barriers, or any combination of fences, walls, buildings or similar barriers, and that is zoned for business operations or where livestock, produce or other commercial items are located." A.R.S. § 13-1501(4).

**¶9**      In *State v. Lewis*, this Court examined whether sufficient evidence supported a felony-murder conviction that was based on the predicate felony of third-degree burglary. 236 Ariz. 336, 343, ¶ 25 (App. 2014). There, the defendant argued that the yard at issue was not enclosed within the meaning of the burglary statute because the gate was "rarely if ever closed," "ratty," and "broken down." *Id*. at 346, ¶ 41. The court concluded that the yard was enclosed because "the existence of a barrier, not its quality, is what the fact-finder must determine to decide whether a yard is 'enclosed' under § 13–1501(5)." *Id*. at 346, ¶ 42. Looking to a dictionary, it stated that to "enclose" is "'[t]o surround on all sides; close in' and '[t]o fence in so as to prevent common use.'" *Id*. (citing *The American Heritage Dictionary* 587 (5th ed.2011)). The court determined that a yard was enclosed despite having an open or ratty fence so long as the fence was "sufficient to prevent common use of the . . . yard." *Id*. at 346, ¶ 42.

**¶10**      Sufficient evidence supports Garcia's conviction because the yard he entered was a "fenced commercial yard" within the meaning of Arizona's third-degree burglary statute. A.R.S. § 13-1501(4) instructs that a fenced commercial yard is one "surrounded completely by fences, walls, buildings or similar barriers, or any combination of fences, walls, buildings or similar barriers . . . ." That is precisely what we have here. Evidence at trial demonstrated that the property was surrounded on all sides by either fencing, the business' walls, or concrete walls topped with barbed wire. Described as a secure compound, the fence at issue here was more complete than the barrier we found to adequately constitute a "fence" in *Lewis*. Because the plain language of the burglary statute makes clear that the yard was "fenced" within the statute's meaning, we need look no further.

**¶11**      Garcia contends that the yard was not "fenced" because the victim's business and residence shared a common area with his brother's business. Therefore, the barrier enclosing the yard did not satisfy the standard we established in *Lewis* because it did not prevent common use of the yard. Garcia misconstrues *Lewis*'s holding. As a threshold matter, the

issue addressed in *Lewis* was whether the term "fenced" applies to both "commercial" and "residential" yards under A.R.S. § 13-1506. *Lewis*, 236 Ariz. at 344, ¶ 31. The discussion of what makes a yard "fenced" was material only to the question of whether giving an erroneous jury instruction was harmless error. *Id*. at 344–45, ¶ 25, 38.

**¶12** Further, Garcia misunderstands the dictum from *Lewis* advising that a fence must be sufficient to prevent common use. Garcia appears to interpret this requirement such that any yard that includes a shared or common area, like the yard, is excluded from the burglary statute because, by definition, a barrier enclosing a common area does not prevent common use. However, the "common use" described in *Lewis* that a "fence" must be sufficient to prevent does not include use by authorized persons, like business owners and their customers. Instead "common use" in the context of the burglary statute refers to use by the general public. In fact, the same dictionary from which the *Lewis* court extracted the definition of "enclosed" variously defines "common" as "[o]f or relating to the community as a whole; *public* . . . ." *Common*, American Heritage Dictionary (5th ed. 2011) (emphasis added). *Merriam-Webster* similarly defines "common" as "of or relating to a community at large: *public*." *Common*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014) (emphasis added). Adopting Garcia's understanding of "common use" would violate principles of statutory construction and lead to the absurd result that any commercial yard used by co-tenants is definitionally excluded from the burglary statute.

**¶13** Conversely, Garcia argues that construing "fenced commercial or residential yard" under the burglary statute to include fenced yards enclosing more than a single commercial or residential structure would lead to the absurd result that a homeowner in a gated community who took an apple from a neighbor's yard would be considered a felon. This concern lacks merit. As a homeowner in the gated community, the defendant in Garcia's hypothetical would have lawfully entered the fenced area. Therefore, they could not be guilty of burglary. As to Garcia's argument regarding to what extent fenced "apartment complexes, condominium projects, duplex apartments and the like" may "be brought within the ambit of the statute," that issue is not before us. "His distress lies in problems which at this stage are imaginary. We will not render advisory opinions anticipative of troubles which do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict." *Velasco v. Mallory*, 5 Ariz. App. 406, 410–11 (1967).

¶14 Garcia concludes with the argument that the State failed to meet its burden to prove that the yard was a "commercial" yard because the State did not provide direct evidence that the property was zoned for business operations. However, A.R.S. § 13-1501(4) provides that a fenced yard is "commercial" where it "is zoned for business operations *or* where livestock, produce or other *commercial items* are located." (Emphasis added). Evidence at trial showed that the victim stored equipment used for his carpet-cleaning business in the yard, including jacks and hoses. *State v. Patterson*, 21 Ariz. App. 136, 137 (1973) (Commercial items are "goods whose ultimate purpose is the furtherance of a business or commercial activity as distinguished from a purely private activity."). Accordingly, the State met its burden to prove that the yard was "commercial" in nature.

## CONCLUSION

¶15 Because the State presented sufficient evidence to prove that Garcia committed burglary of a fenced commercial yard, we affirm his conviction and sentence.

