FILED BY CLERK

JUN -4 2010

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,               )
                                    )         2 CA-CR 2009-0111
                     Appellee,      )         DEPARTMENT B
                                    )
              v.                    )         O P I N I O N
                                    )
JEFFREY LEE HINDEN,                 )
                                    )
                     Appellant.     )
                                    )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20083139

Honorable Teresa Godoy, Judge Pro Tempore

VACATED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Amy M. Thorson                              Tucson
                                                          Attorneys for Appellee


Isabel G. Garcia, Pima County Legal Defender
  By Scott A. Martin                                                 Tucson
                                                          Attorneys for Appellant


E C K E R S T R O M, Presiding Judge.

¶1        After a jury trial, appellant Jeffrey Hinden was convicted of third-degree burglary pursuant to A.R.S. § 13-1506(A)(1).  The trial court sentenced him to a mitigated term of 1.5 years' imprisonment.  On appeal, he argues the state presented insufficient evidence to support his conviction because it failed to prove the property he had entered was a "fenced commercial yard" as defined in A.R.S. § 13-1501(4).[1]  For the following reasons, we agree and vacate his conviction.

## Factual and Procedural Background

¶2        We view the evidence in the light most favorable to sustaining Hinden's conviction.  *State v. Cox*, 217 Ariz. 353, ¶ 22, 174 P.3d 265, 269 (2007).  In August 2008, Ron S., the owner of a local business, called the Tucson Police Department to report that a person was inside the fenced yard of a nearby property where he knew "no one was supposed to be."  The property formerly had housed a demolition business, and the person appeared to be removing copper pipes from a large appliance which lay in the yard.

¶3        When Detective Richmond Holley arrived at the scene, he observed Hinden inside the large fenced yard "bending over [and] picking items up that looked to be metal pipe, scrap metal" and then moving them to another location.  Holley spoke briefly with Ron; when he looked back in the yard, Hinden was outside the fence.  A box containing various pieces of scrap copper was near Hinden on the ground, and some loose scrap

<hr />

[1]We refer to the current version of the statute, as the changes to § 13-1501 since the date of Hinden's offense do not affect our analysis.  *See* 2003 Ariz. Sess. Laws, ch. 172, § 1.

metal was on the ground near the box. An officer testified the total value of the scrap metal Hinden had in his possession was about ten dollars.

¶4 Angelica A. testified that the demolition company was her father's business before he passed away in 1990. Her mother now owns the business and Angelica is its representative. Angelica testified the business is "no longer running right now." She stated, "We have the yard, and we are dismantling everything in the yard in order to sell the property."

¶5 Ron testified that in the four years he had owned his automobile repossession company, "there has never been anybody working [at the demolition business] at all." He described the yard as "rather disorganized" and stated, "Things had been left out, [and] they were exposed to the elements." As far as he could tell, neither the yard nor the fence surrounding it had been cleaned or maintained.

¶6 Hinden moved for a judgment of acquittal pursuant to Rule 20, Ariz. R. Crim. P., arguing the state had not established the elements of third-degree burglary because it had not shown the property was being "used primarily for business operations" at the time of the burglary. The trial court denied the motion and the jury found Hinden guilty. This timely appeal of his conviction and sentence followed.

## Discussion

¶7 As he argued below, Hinden contends there was insufficient evidence he committed burglary of a "fenced commercial yard" as defined by A.R.S. §§ 13-1501(4)

and 13-1506(A)(1).[2] That statute provides that burglary in the third degree is committed when a person "[e]nter[s] or remain[s] unlawfully . . . in a fenced commercial or residential yard with the intent to commit any theft or any felony therein."[3] A fenced commercial yard is defined as "a unit of real property that is surrounded completely by fences, walls, buildings or similar barriers, or any combination of fences, walls, buildings or similar barriers, and that is used primarily for business operations or where livestock, produce or other commercial items are located." § 13-1501(4).

¶8         Hinden argues that, based on this definition, the property was not a fenced commercial yard because there was no business actively in operation at the time of his entry and the statute expressly requires the property to be presently used "primarily for business operations." *Id.* The trial court denied the motion, concluding "the statute [does not] require[] that the business actually be running, just that it be operated as a business,

---

[2]Although acknowledging the standard of review of the trial court's denial of a Rule 20 motion is an abuse of discretion, *see State v. Lychwick*, 222 Ariz. 604, ¶ 7, 218 P.3d 1061, 1063 (App. 2009), Hinden argues "this standard is erroneous, because a trial court's ruling on a Rule 20 motion is not discretionary" and because "the standard for an appellate court's review of an analogous claim of insufficiency of the evidence, when raised for the first time on appeal in the absence of a Rule 20 motion below, is necessarily de novo." We need not address the seeming inconsistency in these two standards because the trial court's ruling here was based on statutory interpretation, a question of law we review de novo. *See State v. Wilson*, 200 Ariz. 390, ¶ 4, 26 P.3d 1161, 1164 (App. 2001).

[3]The indictment charged Hinden with violating § 13-1506 and alleged he had committed "burglary in the third degree of a non-residential structure" rather than burglary of a fenced commercial yard. However, throughout the proceedings in this case, the state consistently argued and presented evidence that Hinden had committed burglary of a fenced commercial yard. The state presented no evidence or argument in support of a charge of burglary of a nonresidential structure. On appeal, neither party has argued burglary of a nonresidential structure was an alternative theory of the case, and we find no support in the record for such an alternative theory, including the grand jury transcript. Accordingly, we do not address the issue.

and clearly [the demolition company] was operating as a business, whether it was generating income or not at the time."

¶9        Our primary purpose in interpreting a statute is to give effect to the legislature's intent. *State v. Ross*, 214 Ariz. 280, ¶ 22, 151 P.3d 1261, 1264 (App. 2007). "We look first to the statute's language because we expect it to be 'the best and most reliable index of a statute's meaning.'" *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993), *quoting Janson v. Christenson*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). And, if the statute's language is plain and unambiguous, we look no further. *Id.* Section 13-104, A.R.S., requires us to construe the language in criminal statutes "according to the fair meaning of their terms to promote justice and effect the objects of the law, including the purposes stated in [A.R.S.] § 13-101." One of those purposes is to "limit the condemnation of conduct as criminal when it does not fall within the purposes set forth." § 13-101(3).

¶10       Hinden argues the plain language of § 13-1501(4) requires the business to be presently used for a commercial purpose because of the statute's use of the present tense: "*is* used primarily for business operations," and "where livestock, produce, or other commercial items *are* located." *Id.* (emphasis added). Indeed, our legislature has acknowledged the significance of verb tense in statutory interpretation. *See* A.R.S. § 1-214(A) ("Words in the present tense include the future as well as the present."). This court has relied on the present tense construction of statutes when determining whether their terms contain a contemporaneousness requirement. *See, e.g.*, *State v. Taylor*, 216 Ariz. 327, ¶¶ 20, 23, 116 P.3d 118, 124, 125 (App. 2007) (concluding present tense use in

5

statute and rule means only defendant's current financial resources relevant to determining amount of reimbursement for public defender representation); *Town of Wickenburg v. State*, 115 Ariz. 465, 468, 565 P.2d 1326, 1329 (App. 1977) (deciding present tense use in declaratory judgment statute means rights must currently be affected for justiciable controversy to exist). Based on the plain language of § 13-1501(4), a yard constitutes a commercial yard if it is being used for some business purpose at the time of the illegal entry.

¶11        The state contends this interpretation would yield an absurd result if applied to a business that had just closed its operation. But our reasoning does not require a narrow understanding of what constitutes an active business operation, and a jury reasonably could conclude that the process of winding down a business or storing its assets for eventual liquidation is such an operation. *See State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980) ("Where the evidence raises a question of fact for the jury and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion for directed verdict of acquittal is not error."). Here, although the state presented evidence the owners of the fenced lot eventually planned to sell it and intended to clear items from the lot to do so, it presented no evidence the owners were in the process of winding down a business or that they considered the items in the unmaintained open yard to be commercial assets rather than refuse. Indeed, the state presented no evidence there had been any active business operation on the property for eighteen years.

¶12        Moreover, were we to conclude a fenced commercial yard includes any property that was "used primarily for business operations" at some point in time,

6

regardless of whether it currently is being used for that purpose, we would be expanding the statute's reach beyond its express language. *See State ex rel. Morrison v. Anway*, 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960) ("It is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions."). This we may not do without usurping the legislature's exclusive role in defining crimes. *See State v. Miranda*, 200 Ariz. 67, ¶ 5, 22 P.3d 506, 508 (2001) (defining crimes is legislature's function and "[c]ourts may not add elements to crimes defined by statute").

¶13        Finally, our construction of the statute is consistent with the historical purpose of sanctioning burglary at common law. That purpose is "to punish the forcible invasion of a habitation and violation of the heightened expectation of privacy and possessory rights of individuals in structures and conveyances." 12A C.J.S. *Burglary* § 1, at 153 (2004); *see State v. Mitchell*, 138 Ariz. 478, 480, 675 P.2d 738, 740 (App. 1983) ("[T]he crime of burglary necessarily involves an infringement of the victim's right to privacy . . . ."); 1 Rudolph J. Gerber, *Criminal Law of Arizona*, 1507-2 (2d ed. 1993) (residential burglary punished more severely than nonresidential because of "possibility of confrontation, surprise, terror, and possible injury to occupants"). Here, where no person had been seen working on the property for at least four years and the business had not been in operation for eighteen years, Hinden's entrance onto the property constituted a comparatively modest, albeit non-trivial, invasion of the privacy and possessory interests of Angelica and her family. Thus, the legislature reasonably could have regarded such criminal conduct occurring on property that had been unoccupied and

7

inactive for a significant period of time neither sufficiently dangerous nor sufficiently invasive to constitute a felony; rather, it reasonably could have concluded such an offense would be addressed adequately under statutes sanctioning theft or trespass. Indeed, our statutory scheme, which sets forth no less than three levels each of burglary and trespass, suggests the legislature intended to make these very types of distinctions. *See* A.R.S. §§ 13-1502 through 13-1504 (trespass); A.R.S. §§ 13-1506 through 13-1508 (burglary).

**¶14** As the state points out, however, the definition of fenced commercial yard also can be satisfied by showing the yard was property upon which "livestock, produce or other commercial items are located." § 13-1501(4). And, the state contends, "[t]he evidence here showed that the property contained construction materials." We agree with the state that the term "commercial items" as used in § 13-1501(4) encompasses the storage of "construction materials" for future use. *See* 1969 Ariz. Sess. Laws, ch. 38, § 1 (former A.R.S. § 13-302(A), the precursor statute to § 13-1501(4), specifically itemizing "construction materials" as commercial items); *see also State v. Altamirano*, 166 Ariz. 432, 434, 803 P.2d 425, 427 (App. 1990) (acknowledging former § 13-302(A) "conceptually similar" to current statute). But we disagree the evidence here showed the property contained such materials. Indeed, there was no evidence presented about which of the items found with Hinden actually had been left in the yard other than the testimony that he was disassembling a large appliance. And, the only evidence of the ultimate purpose of the items in the yard—Angelica's testimony her family planned to clear the yard to sell the property—does not suggest the family believed the items to have any value. Moreover, the state presented no evidence the items in the yard were construction

8

materials or that they ultimately were to be used in any commercial activity. Thus, the state failed to show Hinden committed burglary of a yard "where livestock, produce or other commercial items are located." § 13-1501(4).

¶15 To be clear, nothing in our reasoning should be read to suggest that Hinden's behavior in entering the property was lawful. To the contrary, from the evidence presented, a jury could have found the elements of misdemeanor theft or criminal trespass in the third degree. *See* A.R.S. §§ 13-1502(A)(1), 13-1802(A)(1), (G); *cf. State v. Jones*, 27 Ariz. App. 180, 182, 552 P.2d 769, 771 (1976) ("It may well be that the appellant could have been charged with another and lesser crime such as theft, but he was not. The requirements for the crime of burglary, with which appellant was charged, were not satisfied in this case."). We simply conclude that the state has failed to demonstrate that Hinden's conduct amounted to the greater crime of felony burglary in the third degree, as our legislature has defined that offense.

## Disposition

¶16 Because the state did not present sufficient evidence to show Hinden committed burglary of a fenced commercial yard, we vacate his conviction. *See State v. Garfield*, 208 Ariz. 275, n.1, 92 P.3d 905, 907 n.1 (App. 2004); *see also Peak v. Acuna*, 203 Ariz. 83, ¶ 8, 50 P.3d 833, 835 (2002) ("When a conviction is reversed for insufficiency of evidence, the reversal is, in effect, an implied acquittal of the charges. Therefore, double jeopardy precludes retrial.").

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

9

CONCURRING:

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge


/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Judge