NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAVID LEE SATOVICH, *Appellant.*

No. 1 CA-CR 14-0295
FILED 4-21-2015

Appeal from the Superior Court in Maricopa County
No. CR2013-115104-001
The Honorable Harriett E. Chavez, Retired Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew S. Reilly
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Margaret Green
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

---

**P O R T L E Y**, Judge:

¶1        David Lee Satovich appeals his convictions for burglary in the third degree and possession of burglary tools.  He argues that the trial court erred by denying his Arizona Rule of Criminal Procedure ("Rule") 20 motion and giving the jury a flight instruction over his objection.  For reasons set forth below, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        The owner of a carpet business, Gerald, heard his dogs barking on April 2, 2013, the way they usually did when someone was at the adjacent business, Bolt's Metalizing.  Gerald went outside and observed two men inside the fenced yard at Bolt's "crouched down" on the back side of a piece of equipment.[2]  He called out twice asking what the men were doing.  They reacted to his second yell, and one of them came over and explained that they were "taking this piece of equipment apart so it could be transported to their new location."  Because Gerald knew the business had been sold and moved, the explanation "sounded feasible" and Gerald returned his attention to his work.  Later, hearing his dogs bark again, Gerald went outside and saw the two men "grasping wire out of a compartment and just ripping it out of the machine."  It struck him as odd because the two men were "working even faster at" pulling wires, but there

---

[1] We view the evidence in the light most favorable to sustaining the convictions and resolve all reasonable inferences against the defendant.  *State v. Karr*, 221 Ariz. 319, 320, ¶ 2, 212 P.3d 11, 12 (App. 2008).

[2] The equipment was described variously as a "baghouse" or a "dust collector."  It weighed "thousands of pounds" and required several men and heavy machinery to move.  Bolt's had used the machine to "suck up" the smoke and small particles generated in the process of applying metal or ceramic to airplane parts in order to comply with OSHA regulations.

was no crane, forklift or any transportation other than a motorized scooter.[3] He told them to "stop what [they] were doing" without success.

¶3 After Gerald yelled that he was "calling the police," the two men "scattered." The man who had spoken to Gerald took something out of the machine that appeared to be "quite heavy," put it on the scooter, pushed the scooter onto 36th Street, and drove off. Satovich, however, headed east, went "over . . . [a] six to eight foot fence" to reach 37th Street, and then proceeded to walk north on 37th Street. Satovich had a duffel bag with wire hanging out of it. Gerald pointed Satovich out to a Phoenix police officer when he arrived.

¶4 The officer stopped Satovich as he was walking north on 37th Street. The officer noticed Satovich was "carrying a grey tool bag type thing" and could "see some wire sticking out of it." The bag also contained tools, including knives, a screwdriver, a multi tool, and large pliers and large shears used to cut wire or metal sheeting. Satovich subsequently told the officer that "a guy he only knew as John" had asked him if he wanted to make ten dollars an hour by removing some equipment from the business. Satovich agreed, and they began to remove some of the items until "an unknown guy then yelled at them." According to Satovich, John walked over and talked to "that guy" and then returned and "said he had to leave." John left on the scooter[4] after he and Satovich agreed "to meet up someplace in about an hour in the area." Prior to leaving, John informed Satovich to "go ahead and take some of the wire for his payment if he wanted to." Satovich also stated that he and John had just "pulled some wire" while they were on the property. Eventually, Satovich told the officer that John was "John Chambers . . . a transient in the area that scraps metal all the time," that he knew John "from the street," and that "John commonly stayed in the back of an abandoned business at the corner of 37th Street and Washington."

¶5 During his investigation at the property, the officer noticed that several of the electrical junction boxes had their covers off and wires hanging out. He saw three locations on the building where copper tubing had been cut off. The tubing was jagged and bent, not "professionally cut" but broken or cut with "some type of cutter." The officer walked to the area

---

[3] Gerald described the scooter as the type "that you see the handicapped and the elderly ride."

[4] Although the police never found John, the scooter was found abandoned in a driveway on North 36th Street. The scooter had some wire "lying" on it.

where Gerald spotted Satovich and John "pulling the wire . . . from . . . a junction box near an electrical motor." The officer saw that "the wires coming out of the motor were gone." He traced the conduit "down into the ground and towards the direction of the building" where he noticed "another panel with a conduit coming out of the ground that was now empty, and no wires were inside of it." The wire in Satovich's bag was "solid core copper wire with a black coating," but there was also "a roll with a green coating on it." The wiring in the bag matched the wire at the scene.

¶6 The State charged Satovich with burglary in the third degree and possession of burglary tools. A jury found him guilty as charged. The jury also found three aggravating factors, and the trial court, after a hearing, found that Satovich had two "allegeable non-historical prior felony convictions." Satovich was subsequently sentenced to a mitigated term of four years in prison for the burglary and a concurrent one year term for possession of burglary tools. He was given seventeen days of presentence incarceration credit. We have jurisdiction over this appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and -4033.[5]

## DISCUSSION

I. Rule 20

¶7 Satovich first contends that the State presented insufficient evidence to convict him and the court erred by denying his Rule 20 motion. He specifically argues that the evidence was insufficient to prove that he committed third degree burglary because the State failed to prove that the property was "a fenced commercial yard."

¶8 A conviction in a criminal case must be supported by "substantial evidence." *State v. Mathers*, 165 Ariz. 64, 66-67, 796 P.2d 866, 868-69 (1990). Substantial evidence is "proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Fulminante,* 193 Ariz. 485, 493, 975 P.2d 75, 83 (1999) (quoting *Mathers*, 165 Ariz. at 67, 796 P.2d at 869).

¶9 "[The] question of sufficiency of the evidence is one of law, subject to de novo review on appeal. *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011) (citing *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

---

[5] We cite to the current version of the statute unless otherwise noted.

fact could have found the essential elements of the crime beyond a reasonable doubt." *West*, 226 Ariz. at 562, ¶ 16, 250 P.3d at 1191. Both direct and circumstantial evidence must "be considered in determining whether substantial evidence supports a conviction." *Id.* If reasonable minds may differ on the inferences to be drawn from the facts, the evidence is nonetheless substantial and the conviction will be upheld. *State v. Williams*, 233 Ariz. 271, 273, ¶ 6, 311 P.3d 1084, 1086 (App. 2013) (citing *State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1024, 1037 (1997)). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 614 (1996).

**¶10** Satovich was charged with third degree burglary for having "entered or remained unlawfully in the fenced commercial yard of [T.B.]" with the intent to commit a theft or a felony therein. A "fenced commercial yard" is defined as "a unit of real property that is surrounded completely by fences, walls, buildings or similar barriers, or any combination of fences, walls, buildings or similar barriers, and that is zoned for business operations or where livestock, produce or other commercial items are located." A.R.S. § 13-1501(4).

**¶11** Relying on *State v. Hinden*, 224 Ariz. 508, 233 P.3d 621 (App. 2010), Satovich argues that the property he had entered was no longer a commercial yard because the metalizing business had been sold and the purchaser had moved the business to a different site and, as a result, there was no business actively in operation at the time he entered the property. In *Hinden*, we reversed the third degree burglary conviction because the evidence established that "no person had been seen working on the property for at least four years, and the business had not been in operation for eighteen years" when that defendant entered onto the property. 224 Ariz. at 511, ¶ 13, 233 P.3d at 624. Under those circumstances, we found that the defendant's entrance onto property that was "unoccupied and inactive for a significant period of time" could adequately be addressed "under statutes sanctioning theft or trespass" rather than the burglary statutes, whose purpose was to punish the violation of the privacy and possessory rights of individuals. *Id*.

**¶12** Here, the facts are different than those in *Hinden*. Although the metalizing business had been sold and relocated, not all of the business's equipment had been removed. The business's former owner, who still owned the land and buildings, testified that the purchaser leased buildings from him, continued to use the property to store business items and supplies and remove them as needed. The purchaser, as a lessee, had

keys to the buildings and used them as needed to pick up products or tools. The owner also testified that the purchaser had yet to remove the dust collector that was attached to the building, but had contracted to have it removed by a professional moving company that specialized in moving "industrial equipment."[6] Additionally, the owner testified that he visited the property "every couple of weeks" in order to "flush the toilets, see if it was locked up," and had last visited the property "a couple of weeks" before the burglary. He also testified that any equipment left on the property belonged to the purchaser and "was [the purchaser's] to sell."

¶13 Here, and unlike the facts in *Hinden*, the fenced property Satovich entered onto was not "unoccupied and inactive" for a significant period of time. The property was still owned and its owner checked it periodically. Moreover, the business's purchaser had a possessory interest in the property as a result of his lease of the enclosed site, and had an ownership interest in any equipment still on the property.

¶14 As a result, even though the fenced property was not then an active business site, it was still being used for commercial activity at the time of the burglary. Consequently, the court did not err in denying Satovich's Rule 20 motion as it related to the burglary count. *See West*, 226 Ariz. at 562, ¶ 16, 250 P.3d at 1191.

II. Flight Jury Instruction

¶15 Before closing argument, the State requested the trial court give the "Standard Criminal 9" flight or concealment instruction. The defense objected because there was also no evidence Satovich attempted to run away or hide either himself or the bag from the police. The defense, however, suggested that the instruction be reworded with "something similar to the Defendant leaving the scene or something like that where it doesn't have this big negative connotation that he was actively running and fleeing from the police."

¶16 The court gave the standard RAJI instruction to the jury:

> Flight or concealment: In determining whether
> the State has proved the defendant guilty
> beyond a reasonable doubt, you may consider
> any evidence of the defendant's running away,

---

[6] The purchaser of the business sold the dust collector to a company from Ohio and the dust collector was removed from the enclosed site some two weeks after the burglary.

> hiding or concealing evidence together with all the other evidence. You may also consider the defendant's reasons for running away, hiding or concealing evidence. Running away, hiding or concealing evidence after a crime has been committed does not by itself prove guilt.

Satovich argues on appeal that the court abused its discretion by giving the instruction over his objection when the facts show that he did not exhibit any "eluding behavior."

¶17            We review the court's decision to give an instruction for an abuse of discretion. *State v. Hurley,* 197 Ariz. 400, 402, ¶¶ 9-10, 4 P.3d 455, 457 (App. 2000). We, however, review de novo whether the instructions given correctly stated the law. *State v. Orendain*, 188 Ariz. 54, 56, 932 P.2d 1325, 1327 (1997); *State v. Solis*, 236 Ariz. 285, ___, ¶ 6, 339 P.3d 668, 669 (App. 2014). A party is entitled to a jury instruction on any theory of the case reasonably supported by the evidence. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). "[M]erely leaving the scene of a crime is not evidence of flight." *State v. Lujan*, 124 Ariz. 365, 371, 604 P.2d 629, 635 (1979). "A flight instruction should only be given if the State presents evidence of flight after a crime from which jurors can infer a defendant's consciousness of guilt." *Solis,* 236 Ariz. at ___, ¶ 7, 339 P.3d at 669. In fact, the instruction should only be given if the evidence "supports a reasonable inference that the flight or attempted flight was open" or "the evidence must support the inference that the accused utilized the element of concealment or attempted concealment." *Id.* ((internal quotation marks omitted) quoting *State v. Smith*, 113 Ariz. 298, 300, 552 P.2d 1192, 1194 (1976)). Thus, the key is to determine whether a defendant engaged in some type of eluding behavior designed to camouflage his participation in a crime, thus manifesting a consciousness of guilt. *See State v. Cutright*, 196 Ariz. 567, 570, ¶ 12, 2 P.3d 657, 660 (App. 1999), *disapproved of on other grounds* by *State v. Miranda*, 200 Ariz. 67, 22 P.3d 506 (2001).

¶18            Although Satovich was found walking on the street, the trial court considered the instruction appropriate based on the totality of the evidence, including the fact that Satovich was initially seen crouching behind the dust collector and later "running and jump[ing] a fence." The court acknowledged that it was a "matter of perspective" because there was "a question of whether [Satovich] didn't jump a fence and run away or was just actually walking slowly after he got out," but concluded the instruction was appropriate because "an argument could be made either way." We agree.

**¶19**         Although Satovich and John "scattered" in opposite directions after Gerald yelled that he was going to call the police, Satovich had a bag with coiled wire inside it and had to climb over a six to eight foot fence to get to 37th Street.  While Satovich maintains that there was "no testimony" that he actually heard Gerald say that he was calling the police, it was a fact the jury had to resolve.  And it was reasonable to infer from Satovich's behavior that he heard the statement and that it prompted his precipitous departure.

**¶20**         Satovich also contends that the fact that he walked down 37th Street without hiding the wire that was protruding from his bag shows that he was not "exhibiting any eluding behavior" or attempting to conceal the wire "sticking out of his bag."   Although he did not run once he reached the street, speed, while relevant, is not "conclusive" regarding whether or not to give the instruction.  *Id*.  The crucial inquiry is whether Satovich engaged in some kind of "eluding behavior" that was "designed to camouflage his participation in a crime" which manifested a "consciousness of guilt."  *Id*.  "If the evidence shows a defendant's manner of leaving the scene of a crime reveals a consciousness of guilt, even in the absence of pursuit, an instruction on flight is permissible."  *State v. Salazar*, 173 Ariz. 399, 409, 844 P.2d 566, 576 (1992).  Here, because Satovich initially scattered when Gerald said he was calling the police, and jumped over the fence with stolen wire, qualifies as a type of "eluding behavior" that may manifest a consciousness of guilt.  As a result, the court did not err by giving the RAJI instruction on flight to allow the jury to determine all of the facts in reaching its verdicts.

## CONCLUSION

**¶21**         Based on the foregoing, we affirm Satovich's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama